CONLAN, P. J.
 

 Appellant Julian H. Kay was convicted in the Municipal Court of the City and County of San Francisco by verdict of a jury of violating section 330a of the Penal Code of California. When the case was submitted to the jury the defendant moved for an advised verdict of not guilty. The motion was denied. After his conviction, appellant made a motion in arrest of judgment and a motion for a new trial, both of which motions were also denied. The appellant has appealed from these rulings and from the judgment of conviction. The sole issue presented by this appeal is whether the mere possession of a slot machine of such construction that it is incapable of being used for any purpose other than gambling is a violation of Penal Code section 330a. We are of the opinion that it is.
 

 The record discloses that the San Francisco police seized, under a search warrant, 294 slot machines stored in a warehouse. The machines were owned by appellant and had been stored by him and as a result the charge was placed against him upon which he was subsequently convicted.
 

 The machines were introduced into evidence and their operation described by a police officer called on behalf of the people. It appears from the construction of the machines offered in evidence, as well as from the testimony of the police officer, that they cannot be used, or played, for any purpose except to gamble. To operate the machine a coin is placed in a slot at the top of the machine and a handle on the side of
 
 *Supp. 761
 
 the machine pulled which causes three reels, visible through a window in the front of the machine, to revolve. These reels revolve at different speeds, each reel rotating separately and independently of the other. Bach reel has painted on its circumference devices representing lemons, cherries, oranges, plums, bells and bars. The rotating reels are finally stopped by the haphazard action of the internal mechanism of the machine. After all three reels are stopped, if the cherries, oranges, plums, etc., on the three reels appear through the window in the front of the machine in certain combinations indicated in a legend painted on the front of the machine, the machine will pay varying sums in coins or tokens, depending upon the combination in which the reels have stopped. It will pay nothing at all if the reels stop in a combination which does not appear in the legend. The machines cannot be operated except by coins or tokens and are not adapted to the automatic vending of merchandise.
 

 It is evident that machines of this description can be used for but one purpose: to gamble. The operator has no control over the action of the machine after he has inserted the coin and pulled the lever. It is a matter of common knowledge that the number of coins or tokens which the machine pays out, if it pays at all, is entirely dependent upon chance and that its operation is likewise so dependent.
 

 Machines of this character should not be confused with slot machines which have for their purpose the vending of merchandise without any element of chance. In ordinary vending machines a coin is deposited in a slot, a lever is pulled, and merchandise is received for the coin deposited. Bach person depositing a coin of like denomination receives the same value of merchandise as any other person, no element of chance or uncertainty whatsoever existing. The only reason a person would not receive the article purchased is that the machine is not working properly or it is not stocked. In the legitimate vending machine there is no more chance or uncertainty involved than in a purchase from a clerk, he handing the merchandise to the purchaser and the purchaser paying him the stipulated price.
 

 Penal Code section 330a is as follows:
 

 “Every person who has in his possession or under his control, either as owner, lessee, agent, employee, mortgagee, or otherwise, or who permits to be placed, maintained or kept,
 
 *Supp. 762
 
 in any room, space, inclosure or building owned, leased or occupied by him, or under his management or control, any slot or card machine, contrivance, appliance or mechanical device, upon the result of action of which money or other valuable thing is staked or hazarded, and which is operated, or played, by placing or depositing therein any coins, checks, slugs, balls, or other articles or device, or in any other manner and by means whereof, or as a result of the operation of which any merchandise, money, representative or articles of value, checks, or tokens, redeemable in, or exchangeable for money or any other thing of value, is won or lost, or taken from or obtained from such machine, when the result of. action or operation of such machine, contrivance, appliance, or mechanical device is dependent upon hazard or chance, and every person, who has in his possession or under his control, either as owner, lessee, agent, employee, mortgagee, or otherwise, or who permits to be placed, maintained or kept, in any room, space, inclosure or building, owned, leased or occupied by him, or under his management or control, any card, dice, or any dice having more than six faces or bases, each, upon the result of action of which any money or other valuable thing is staked or hazarded, or as a result of the operation of which any merchandise, money, representative or article of value, check or token, redeemable in or exchangeable for money or any other thing of value, is won or lost or taken, when the result of action or operation of such dice is dependent upon hazard or chance, is guilty of a misdemeanor, and shall be punishable by a fine not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment.”
 

 Appellant concedes that this section makes it unlawful to operate the machines found in his possession but contends that the language of the section is not sufficiently broad to make unlawful their mere possession. This argument is based very largely upon the use of the word “is” in the statute. It is claimed that the phrase in the statute “upon the result of action of which money
 
 is
 
 staked or hazarded” limits the broad prohibitions of the statute and restricts its operation to those cases only in which the machines are in actual use. But the case of
 
 Bobel
 
 v.
 
 People,
 
 173 Ill. 19 [50 N. E.
 
 *Supp. 763
 
 322, 64 Am. St. Rep. 64], is, in our opinion, in point and to the contrary.
 

 There the statute used the word “is”, i. e., “ . . . that whoever in any room . . . keeps . . . joker or slot machine upon which money is staked or hazarded, ... or upon the result of the action of which money or other valuable thing is staked, bet, hazarded, won or lost ...” It was held that the mere possession of a slot machine, which was a gambling device, was a violation of the Illinois statute. The court stated (50 N. E. 324):
 

 “It is next contended that the allegation descriptive of the purposes for which the slot machine was used is faulty. The indictment charges that plaintiff in error did ‘keep a certain slot machine, the same then and there being a device upon the result of the action of which money or other valuable thing is staked. ’ It is claimed that this last allegation should be, ‘upon the result of the action of which money or other valuable thing was then and there staked. ’ The allegation of the indictment is in the language of the statute, and that is sufficient. . . . The clause, ‘upon the result of the action of which money or other valuable thing is staked, ’ is descriptive of the uses of the machine. . . . While a plausible argument is made that, in view of the phraseology of the statute, and especially of the title, the purpose of the act is not to prohibit the mere keeping or using of such a device, but only the keeping or owning of the same to be used for gambling purposes, still it cannot be doubted that the legislature has the power to prohibit the mere keeping in possession of such gambling devices as well as to prohibit their use, as it has done in respect to obscene and indecent pictures, drawings, books, etc. . . . And we are of the opinion that it was the purpose of the legislature in enacting this statute, not only to suppress the use of these gambling devices, or the keeping of them for gambling purposes, but also to prohibit the ownership or the keeping of them, whether for gambling purposes or not; otherwise, why make it a criminal offense to own or keep them, without qualification as to the purpose of such ownership or keeping, ...”
 

 To accept appellant’s construction of the statute (sec. 330a of the Penal Code) that the machines must be in use before there is a violation, we would have to cast entirely aside the purpose of its enactment, because, before section 330a was
 
 *Supp. 764
 
 enacted, section 330 of the Penal Code covered and still covers a situation where a slot machine is operated for money, checks, credits or other representative of value.
 
 (Ex parte Williams
 
 (1906), 7 Cal. Unrep. 301 [87 Pac. 565].) There is nothing in section 330a which repeals by implication the provisions of section 330.
 
 (Ex parte Lowrie
 
 (1919), 43 Cal. App. 564 [185 Pac. 421].) In order to ascertain the true spirit and import of an act, the courts may also consider the mischiefs such act was designed to remedy: Section 330 of the Penal Code was ineffectual so far as the operation of a slot machine for anything other than money, checks,' credits or other representative of value was concerned; likewise it did not prohibit the possession of these devices. Obviously then, section 330a of the Penal Code, which was enacted after the decision in
 
 Ex parte Williams (supra),
 
 had for its intention the absolute prohibition of “any slot or card machine, contrivance, appliance or mechanical device, upon the result of action of which money, or other valuable thing is staked or hazarded, ... or as a result of the operation of which any merchandise, money, representative, or articles of value, checks, or tokens, redeemable in or exchangeable for money or any other thing of value is won or lost, or taken from or obtained from such machine, when the result of action or operation of such machine, contrivance, appliance, or mechanical device is dependent upon hazard or chance, ...” We interpret this to mean any such machine or contrivance which is normally and as a customary thing used as a gambling device. 1 We are of the opinion that it was the intention of the legislature to prohibit these machines in the possession or control of anyone in any place, whether for gambling purposes or not; otherwise why set forth, ‘ ‘ Every person who has in his possession or under his control, either as owner, lessee, agent, employee, mortgagee, or otherwise, or who permits to be placed, maintained or kept, in any room, space, inclosure or building owned, leased or occupied by him, or under his control, ...”
 

 This construction of our statute is not only proper but necessary if any effect is to be given to the statute and the purposes of its enactment, to wit: The suppression of gambling devices. A contrary construction for all practical purposes would place section 330a in the position of being su-'
 
 *Supp. 765
 
 perfluous, and we cannot believe that was the intention of the legislature.
 

 Bobel
 
 v.
 
 People, supra,
 
 is cited with approval in
 
 Hurvich
 
 v.
 
 State
 
 (1935), 230 Ala. 578 [162 So. 362], where the mere possession of a slot machine gambling device was held to violate the Alabama law. The court there stated, at page 363;
 

 “ . . . We think it clear that for the purpose of preventing the use of a device for gambling the Legislature may prohibit its possession or ownership, when it is designed for that purpose. The statute does not make its intended use for that purpose a prerequisite. ’ ’
 

 Stanley-Thompson Liquor Co.
 
 v.
 
 People,
 
 63 Colo. 456 [168 Pac. 750], involved certain gambling devices, some of which were stored in the back room of plaintiff in error’s place of business, and some in a warehouse. It is stated in the opinion:
 

 “It is well settled that things which are capable of no use for lawful purposes—and it is established that these instruments are of that class—are not the subject of property. They cannot be recovered in replevin, nor will damages be given for their loss or injury. They are as some courts have said, ‘outlaws.’ (Citing cases.)
 

 “ . . . Since they are at all times a menace to society, not capable of use except by violating the law, there is no reason why their abatement as a nuisance should be delayed until the law has been violated.”
 

 Appellant relies strongly on the case of
 
 Fey
 
 v.
 
 Rossi Improvement Co.
 
 (1914), 23 Cal. App. 766 [139 Pac. 908], in which case the plaintiff sought to cancel a lease, claiming that he had leased the property for the purpose of manufacturing slot machines thereon, and that thereafter section 330a of the Penal Code was enacted, making such machines illegal. The court there stated:
 

 “The complaint in the present case does not allege that the demised premises were leased for the purpose of manufacturing any of the gambling devices designated in the statute. The allegation in the complaint in this behalf is merely that the premises were leased for the purpose of manufacturing ‘coin operating machines commonly known as nickel in the slot machines ”... ”
 

 It is obvious that the decision in the case of
 
 Fey
 
 v.
 
 Rossi Improvement Co., supra,
 
 was based upon the uncertainty in
 
 *Supp. 766
 
 the complaint, in that it did not specify that the premises were leased to manufacture gambling devices designated in the statute and the decision further states that the possession of certain niekel-in-the-slot machines which return something of value without any element of chance other than that usually presented in ordinary transaction of barter and trade are not illegal under section 330a of the Penal Code. This decision is not helpful to the appellant.
 

 In the Matter of Rogers
 
 (1911), 160 Cal. 764 [118 Pac. 242], a machine, the operation of which involved a hazard to a customer with reference to cigars, was held to be a lottery under sections 319 and 320 of the Penal Code. In
 
 People
 
 v.
 
 Brown,
 
 151 Misc. 712 [273 N. Y. Supp. 560] (May 16, 1934), involving a machine similar to the one in the instant case and a statute substantially the same as section 330a of the Penal Code, there was proof that tokens were inserted in the machine and tokens issued therefrom for which a police officer received fifty cents. It was held that the keeping or maintaining of such a machine was a violation of section 982 of the Penal Law which denounced the keeping of a machine into which may be inserted a piece of money or other object, and from which as a result may be issued any piece of money, etc.
 

 In
 
 Triangle Mint Corp.
 
 v.
 
 Edward P. Mulrooney, etc.
 
 (Feb. 26, 1931, App. Dept. Superior Court), 232 App. Div. 783 [248 N. Y. Supp. 880], it was held that the police were justified in seizing certain slot machines which, with the insertion of a cotter pin as a cloak or cover therefor, would make the machine an innocent vending machine, but with the cotter pin extracted would make the machine a contrivance in violation of sections 970a and 982 of the Penal Law. The opinion states:
 

 “The machines are undoubtedly manufactured and leased for gambling purposes, with the insertion of the cotter pin as a cloak therefor.”
 

 People
 
 v.
 
 Jennings,
 
 Court of Appeals of New York (July 15, 1931), 257 N. Y. 196 [177 N. E. 419], relied upon by .appellant, involved a machine, which, by the dropping of a coin in a slot and the pulling of a lever, a candy mint falls out of the machine and a witty or funny saying appears in an upper panel. One or more metal rings of no intrinsic value may also fall out according to the combinations formed
 
 *Supp. 767
 
 upon the turn of the lever. These rings or metals, are of no monetary value. By their insertion in the slot, other bright or witty statements appear in the panel. The only chance connected with the operation of the machine is that wit or humor may momentarily brighten up the vacuous minds hunting amusement. It was held that the judgment of conviction of section 982 was unsupported by the evidence and was reversed because nothing of value, at least of money value, came out of the machine in the control and possession of the defendant.
 

 However, in
 
 People
 
 v.
 
 Wertheimer,
 
 152 Misc. 733 [274 N. Y. Supp. 90 (Aug. 4, 1934), a conviction was held for the possession of slot machines in violation of section 982 of the Penal Law. The opinion states:
 

 “Appellant’s counsel cites the case of
 
 People
 
 v.
 
 Jennings,
 
 257 N. Y. 196 [177 N. E. 419], upon their claim that a wire tying the key to the machine had to be removed and the coins inserted in the machine before it would properly work; that therefore, the machines were not, in their then condition, such as defined by the statute.
 

 “I think the case cited is clearly distinguishable from this case. There, a machine which was legal, could be transformed into a machine which was illegal, which, however, has not been done. In the ease at bar there was no transformation required. The machines here were manufactured for the purpose of doing that which, under the statute, is illegal. The mere fact that a wire had been (apparently only on some of them) so attached that it had to be removed so that the machines would work at all, did not make of those machines, a legal machine within the statute.”
 

 We are of the opinion that the decisions of these cases are additional authority for the People’s contention that the machines in question are, from their construction, gambling devices.
 

 We are of the opinion that since the slot machines in the instant case are incapable of being used for any purpose except gambling, their mere possession is a violation of Penal Code section 330a and that it is not a necessary element of the offense that the machines be actually used or kept for gambling purposes.
 

 The judgment of conviction is ordered affirmed,
 

 Griffin, J., and Dooling, Jr., J.,
 
 pro tern.,
 
 concurred.